**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JACK SCHUMACHER, | 2:05-CV-01082-BES-RJJ |
| Plaintiff, | **ORDER** |
| v. | |
| STATE FARM FIRE & CASUALTY COMPANY, a foreign corporation; DOES 1-10; ROE ORGANIZATIONS, 1-10, inclusive, | |
| Defendants. | |

Before the court is a Motion for Summary Judgment (#15) filed by Defendant State Farm Fire & Casualty Insurance Company ("State Farm"). Plaintiff Jack Schumacher ("Schumacher") filed a Response to the Motion for Summary Judgment (#25). Thereafter, State Farm filed its Reply in Support of Motion for Summary Judgment (#27).

**I. BACKGROUND**

Schumacher is a resident of Clark County, Nevada. State Farm is an Illinois corporation that conducts business in Clark County, Nevada. Schumacher has a photography business, Films Developed In 60 Minutes, in Las Vegas, Nevada. The business was insured by State Farm through a business policy that included coverage for business personal property and for loss of income.

Between December of 1998 and April of 1999, four floods occurred at Schumacher's business. Two of those floods occurred on or about December 1998 and two more occurred during February and April of 1999. Schumacher filed two claims with State Farm for the water damage to his business. The first claim was reported to State Farm on February 10, 1999,

for water damages that occurred three days earlier and the second claim was for water damage that occurred on December 15, 1999. Both claims were for loss of business personal property and loss of income on both claims.

State Farm investigated and evaluated the claims over a period of time. From at least August of 2000 through February of 2001, State Farm asked for information and documentation from Schumacher to support the claims for loss of property and loss of business income. Many of these requests were repeated attempts to obtain information already requested, but not yet provided by Schumacher. State Farm conducted an investigation on the loss of income claim, which included hiring an accountant to assist in its analysis, meeting with Schumacher's accountant, meeting with employees of Schumacher's business to discuss the lost business, interviewing similarly situated operators of a photography business as well as reviewing testimony from Schumacher and his wife. State Farm's investigation revealed that there was no lost income from two of the contracts and there was a remote possibility that some income could be realized from the third contract.

In July of 2002, State Farm sent a final evaluation letter with a settlement offer to Schumacher. Up to that point in time, State Farm had paid Schumacher at least $273,404.10 for the two claims. Schumacher claimed he was owed a substantial amount of additional monies for various items. On September 20, 2002, State Farm mailed a check for $35,000 as a final offer to Schumacher with a letter that the claims were concluded and State Farm was placing the file on inactive status.

On August 4, 2005, Schumacher filed his pro per First Amended Complaint against State Farm, with a sole cause of action for "breach of duty to enter into good faith settlement negotiations." In his Opposition to State Farm's Motion for Summary Judgment, Schumacher characterizes his complaint as containing two separate claims for relief. The first is a contractual claim based on State Farm's undervaluation of Schumacher's losses. The second claim is s non-contractual claim based upon the alleged bad faith conduct of State Farm.

State Farm filed a motion for summary judgment on the grounds that Schumacher's contractual and extra-contractual claims are time-barred under the applicable statute of

limitations. Alternatively, State Farm argues that Schumacher's complaint should be dismissed because there was a genuine dispute as to coverage and therefore, there was no bad faith on the part of State Farm. State Farm argues a third basis for summary judgment, namely that Schumacher's bad faith claims are premature. Finally, State Farm requests bifurcation of what it terms the breach of contract claim and the bad faith claim. Schumacher does not oppose the bifurcation.

## II. ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998).

Any dispute regarding a material issue of fact must be genuine—the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The evidence must be significantly probative, and cannot be merely colorable. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The burden of proving the absence of a genuine issue of material fact lies with the moving party. Accordingly, "[t]he evidence of the opposing party is to be believed, and all

reasonable inferences that may be drawn from the facts placed before the court must be drawn in the light most favorable to the nonmoving party." Id. (citing Liberty Lobby, 477 U.S. at 255); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998). Nevertheless, if the moving party presents evidence that would call for judgment as a matter of law, then the opposing party must show by specific facts the existence of a genuine issue for trial. Liberty Lobby, 477 U.S. at 250; FED. R. CIV. P. 56(e).  To demonstrate a genuine issue of material fact, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus., 475 U.S. at 586. "If the evidence [proffered by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249–50. Applying these principles, the Court now turns to whether summary judgment is warranted in this case.

*A.     Statute of Limitations.*

State Farm argues that Schumacher's claims are barred by the two-year limitation period found in the insurance contract.  The specific insurance provision in controversy states that no one can bring a legal action against State Farm unless:

> "b. the action is brought within two years after the date on which the accidental direct physical loss occurred.  But if the law of the state in which this policy is issued allows more than two years to bring legal action against us, that longer period of time will apply."

State Farm asks the court to rely solely on the first sentence of paragraph b of the contract and bar Schumacher's complaint based upon the contract's two-year limitation period. Schumacher argues that State Farm is overlooking the second sentence, which allows Nevada's statutory limitations to apply if they provide a longer period of time.

As an initial matter, because this court's jurisdiction is invoked upon diversity of citizenship, a federal court is bound to apply the substantive law of the state in which it sits. Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Strassberg v. New England Mutual Life Ins. Co., 575 F.2d 1262 (9th Cir.1978).  Thus, Nevada law controls.  The Supreme Court of Nevada has held that in ascertaining the meaning of an insurance policy, the language should be analyzed from the perspective of one untrained in law or in the

4

insurance business. American Excess Ins. Co. v. MGM Grand Hotels, Inc. 102 Nev. 601, 604, 729 P.2d 1352 (1986). Policy terms should be viewed in their plain, ordinary and popular connotations. American Excess, 102 Nev. at 604; National Union Fire Ins. v. Reno's Exec. Air, 100 Nev. 360, 364 682 P.2d 1380 (1984). The contract will be read as a whole and given a construction which will accomplish the object of providing indemnity for the losses covered by the policy. Id.

Reading the insurance policy provision as a whole, the court disagrees with State Farm's interpretation of the limitation clause. The provision specifically states that the contract's two-year provision applies, **unless** the state law allows more than two years, which in that case, the longer period of time will apply (emphasis added). The first sentence cannot be read independently of the second sentence and if a state has a longer limitation period, the state law is to be applied. This interpretation gives the policy its plain and ordinary meaning. State Farm's reading of the policy fails to read the policy as a whole, because it ignores the second part of the insurance provision.[1]

Based upon this court's interpretation of the policy, the court will now address the various issues as they relate to the applicable statute of limitations.

**1. Breach of Contract.**

Nevada's statute of limitation provisions are found in Chapter 11 of the Nevada Revised Statutes. NRS 11.190 provides that an action upon a contract, obligation or liability founded upon an instrument in writing must be brought within six years. As this six-year period is longer than the contractual two-year period, the Nevada limitation provision applies. Under the Nevada limitation period, Schumacher's contractual claim was timely filed.

**2. Claim for Bad Faith.**

In Nevada, a bad faith tort action is not "founded upon an instrument in writing" as contemplated by § 11.190(1)(b). Davis v. State Farm Fire and Cas. Co., 545 F.Supp. 370, 372 (D.C.Nev., 1982); Stephens v. McCormack, 50 Nev. 383, 263 P. 774 (1928). The

---

[1] The cases cited by State Farm in support of its interpretation also do not help State Farm. These cases do not contain the second part of the insurance clause, which allows the state statutory limitation to apply if it is longer than the contractual provision.

insurer's duty to deal in good faith is an obligation imposed by law and it does not arise from the terms of the insurance contract. Davis, 545 F.Supp. at 372; United States Fidelity & Guar. Co. v. Peterson, 91 Nev. 617, 620, 540 P.2d 1070, 1071 (1975). A bad faith tort claim is controlled by the four-year statute of limitations covering actions upon a "liability not founded upon an instrument in writing." Davis, 545 F.Supp. at 372; NRS § 11.190(2)(c). This four-year period is longer than the contractual two-year period and therefore, the Nevada limitation provision applies. As Schumacher's claim was brought within the four-year statutory limitation provision, State Farm's bad faith claim was timely filed.

**3. Violation of Statute.**

To the extent that Schumacher's complaint seeks damages for violation of NRS 686A.310, the complaint was filed within the applicable limitation period. NRS 11.190 provides that an action upon a liability created by statute, must be brought within three years. This statutory period is longer than the contractual provision and therefore, the Nevada statutory provision applies. As Schumacher filed his complaint within the three-year period, this claim survives as well.

*B.   Schumacher's Extra-Contractual Claims.*

State Farm also argues that the extra-contractual claims brought against it by Schumacher should be dismissed with prejudice. State Farm argues that this bad faith claim can be dismissed on summary judgment under the "genuine dispute" doctrine. Schumacher alleges that State Farm acted in bad faith in handling his claims by delaying in responding and breaking off negotiations and also by denying full payment of Schumacher's claims.

By Schumacher's own admission, he brought two specific claims against State Farm, an undervaluation claim and a bad faith claim. Specifically, the complaint alleges bad faith and statutory violations for failure to promptly investigate and to provide a fair and equitable settlement. Schumacher's complaint is based on Chapter 686A of the Nevada Revised Statutes as well as the common law claim of bad faith.

NRS 686A.310 and bad faith are not identical causes of action. Pioneer Chlor Alkali Company, Inc. v. National Union Fire Insurance Company, 863 F.Supp. 1237, 1244 (D.Nev.

6

1994); see also, Hart v. Prudential Property & Casualty Ins. Co., 848 F.Supp. 900 (D.Nev.1994).  Bad faith and NRS 686A.310 involve different legal analyses, and a violation of a provision of NRS 686A.310 is not per se an act of bad faith.  Id.  Bad faith involves something more than an unreasonable action, a negligent action, by the insurer.  Pioneer, 863 F.Supp. at 1243.  That is, bad faith does not directly address the manner in which an insurer processes a claim as does NRS 686A.310.  Id.  Bad faith exists where an insurer denies a claim without any reasonable basis and with knowledge that no reasonable basis exists to deny the claim.  Id.  In contrast, the provisions of NRS 686A.310 address the manner in which an insurer handles an insured's claim whether or not the claim is denied.  Id.

   *1. **Bad Faith Claim.***

   The Supreme Court of Nevada adopted the cause of action called "bad faith"in United States Fidelity & Guar. Co. v. Peterson, 91 Nev. 617, 540 P.2d 1070 (1975).  Nevada's definition of bad faith is: (1) an insurer's denial of (or refusal to pay) an insured's claim; (2) without any reasonable basis; and (3) the insurer's knowledge or awareness of the lack of any reasonable basis to deny coverage, or the insurer's reckless disregard as to the unreasonableness of the denial.  Pioneer, 863 F.Supp. at 1247, citing American, 102 Nev. At 605; Falline v. GNLV Corp., 107 Nev. 1004, 1009, 823 P.2d 888 (1991); see also, Pemberton v. Farmers Insurance Exchange, 109 Nev. 789, 858 P.2d 380 (1993) ("a]n insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy.").

   The record reveals that State Farm did not deny Schumacher's claims without a reasonable basis or that it denied the claims with the knowledge that it had no reasonable basis to deny coverage or that it recklessly disregarded the unreasonableness of the denial.  State Farm did not deny the claim, it just paid a different value than Schumacher requested.  Under the reasoning of Pioneer, this makes the complaint more of one based upon statutory violations of NRS 686A.310 than it does a bad faith action.  Furthermore, Schumacher has not presented any evidence that could support a finding that there was no reasonable basis to deny coverage and that State Farm knew it had no reasonable basis to deny coverage.  State

7

Farm's investigation of the loss of income claim included hiring an accountant to assist in its analysis, meeting with Schumacher's accountant, meeting with employees of Schumacher's business to discuss the lost business, interviewing similarly situated operators of a photography business as well as reviewing testimony from Schumacher and his wife. State Farm's investigation revealed that there was no lost income from two of the business contracts, while there was a remote possibility that some income could be realized from the third contract. Because of this remote possibility, State Farm offered Schumacher $35,000 to settle the lost income claims, which Schumacher rejected. Based upon this evidence, which Schumacher did not refute, the court finds that State Farm had a rational, reasonable basis for its actions and State Farm is entitled to summary judgment on Schumacher's common law tort claims of bad faith.[2]

### *2.  Statutory Violation of NRS 686A.310.*

Schumacher also has alleged a cause of action for statutory violation of NRS 686A.310, presumably for the undervaluation of his claim. Neither party fully briefed this issue in the summary judgment pleadings. Summary judgment cannot be rendered sua sponte on an issue unless the parties have been put on adequate notice by the court to come forward with evidence on an issue. Celotex, 477 U.S. at 326; Fountain v. Filson, 336 U.S. 681, 682-83 (1949). As the issue has not been raised, argued or briefed by the parties, it is inappropriate for the court to rule on this issue at this time.

### *C.  Bifurcation.*

Finally, State Farm requests that the court bifurcate the undervaluation claim and the bad faith claim for trial. As State Farm has prevailed on the bad faith claim, State Farm's request for bifurcation is denied as moot.

/ / /

///

---

[2] The court's ruling on this issue renders moot State Farm's argument that the bad faith claims should be dismissed as premature.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that State Farm's Motion for Summary Judgment (#15) is **GRANTED IN PART and DENIED IN PART**. State Farm's Motion for Summary Judgment is **GRANTED** with respect to the common law tort of bad faith alleged in Schumacher's Complaint and Schumacher's claim for bad faith is dismissed. State Farm's Motion for Summary Judgment (#15) is DENIED on all remaining causes of action in the Complaint.

Dated this 14th day of December, 2006.

_____
United States District Judge